SCHEDULED FOR ORAL ARGUMENT OCTOBER 6, 2026

**No. 26-5138**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

NEWSGUARD TECHNOLOGIES,

*Plaintiff-Appellant,*

v.

FEDERAL TRADE COMMISSION and ANDREW N. FERGUSON,
in his official capacity as Chairman of the Federal Trade Commission,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Columbia, No. 1:26-cv-00353-DLF

---

# REPLY BRIEF OF APPELLANT

---


Robert Corn-Revere
James C. Grant
Samuel Rudovsky
Heather Pincus
FOUNDATION FOR INDIVIDUAL
RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, DC 20003
(215) 717-3473
bob.corn-revere@fire.org
jim.grant@fire.org
sam.rudovsky@fire.org
heather.pincus@fire.org

*Counsel for Plaintiff-Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii

GLOSSARY OF ABBREVIATIONS .......... x

INTRODUCTION .......... 1

ARGUMENT .......... 1

I. The FTC Cannot Defend This Case as a Standard Antitrust Investigation and Enforcement Action. .......... 1

A. Chairman Ferguson Made Clear the FTC's Actions Focused on the Content of NewsGuard's Ratings. .......... 2

B. The FTC's Claim That It Was Pursuing Legitimate Regulatory Objectives Rings Hollow. .......... 5

C. The FTC's Targeting of NewsGuard Undermines Its Claim of Addressing Legitimate Antitrust Concerns. .......... 9

1. Omnicom Consent Order .......... 9

2. Overbroad and Abusive CID .......... 10

II. The FTC's Actions Targeting NewsGuard Inflicted Ongoing Irreparable Injury. .......... 11

A. The FTC's Direct Infringement of First Amendment Rights Is Irreparable Harm. .......... 11

B. The Record Shows Irreparable Harm. .......... 15

III. The FTC's Jurisdictional Arguments Do Not Bar NewsGuard's First Amendment Claims. .......... 18

A. The District Court Had Jurisdiction Over NewsGuard's Challenge. .......... 18

1. 15 U.S.C. § 45(c) does not foreclose NewsGuard's claims. .......... 19

2. NewsGuard's nonparty status does not bar its constitutional challenge to the Omnicom Consent Order. .......... 22

3. NewsGuard asserts classic First Amendment claims for equitable relief. .......... 23

B. Withdrawal of the CID Does Not Eliminate NewsGuard's Irreparable Injury. .......... 25

IV. NewsGuard Is Entitled to a Preliminary Injunction. .................................... 26
CONCLUSION ........................................................................................... 27
CERTIFICATE OF COMPLIANCE ...................................................... 29
CERTIFICATE OF SERVICE ............................................................ 30

## TABLE OF AUTHORITIES

### Cases

*Alexander v. Sandoval*,
532 U.S. 275 (2001) .......... 23

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
486 U.S. 492 (1988) .......... 8

*Aref v. Lynch*,
833 F.3d 242 (D.C. Cir. 2016) .......... 26

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) .......... 23

*Axon Enterprise, Inc. v. FTC*,
598 U.S. 175 (2023) .......... 18, 20

*Backpage.com, LLC v. Dart*,
807 F.3d 229 (7th Cir. 2015) .......... 14, 16, 26

*Balt. Gas & Elec. Co. v. FERC*,
252 F.3d 456 (D.C. Cir. 2001) .......... 21

*Bell v. Hood*,
327 U.S. 678 (1946) .......... 23

*Benisek v. Lamone*,
585 U.S. 155 (2018) .......... 17

*Block v. Cmty. Nutrition Inst.*,
467 U.S. 340 (1984) .......... 21

*Bronx Household of Faith v. Bd. of Educ.*,
331 F.3d 342 (2d Cir. 2003) .......... 13

*Carr v. Saul*,
593 U.S. 83 (2021) .......... 22

*Centro Tepeyac v. Montgomery County*,
722 F.3d 184 (4th Cir. 2013) .......... 27

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) .................................................. 12–13, 15

*Citizens United v. FEC*,
558 U.S. 310 (2010) .................................................................. 14

*Cleveland Cnty. Ass'n for Gov't by People v. Cleveland Cnty. Bd. of Comm'rs*,
142 F.3d 468 (D.C. Cir. 1998) ........................................................ 22

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) ............................................................ 18–19

*Consumer Federation of America v. FTC*,
515 F.2d 367 (D.C. Cir. 1975) ........................................................ 20

*Culver v. Sec. of the Air Force*,
559 F.2d 622 (D.C. Cir. 1977) ........................................................ 15

*Cummings v. Missouri*,
71 U.S. 277 (1867) ...................................................................... 25

*Déjà vu of Nashville, Inc. v. Metro. Gov't of Nash. & Davidson Cnty.*,
274 F.3d 377 (6th Cir. 2001) ........................................................ 27

*Elrod v. Burns*,
427 U.S. 347 (1976) ..................................................... 12, 15–16

*FBI v. Fikre*,
601 U.S. 234 (2024) ..................................................................... 25

*First Choice Women's Res. Ctrs., Inc. v. Davenport*,
146 S. Ct. 1114 (2026) ........................................... 6, 10–11, 19, 25

*Frederick Cnty. Fruit Growers Ass'n, Inc. v. Martin*,
968 F.2d 1265 (D.C. Cir. 1992) ..................................................... 22

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
561 U.S. 477 (2010) ............................................................ 19, 21

*Friends of the Earth, Inc. v. Laidlaw Env't Services (TOC), Inc.*,
528 U.S. 167 (2000) ............................................................ 25–26

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) ........................................................................ 8

*FTC v. Super. Ct. Trial Lawyers Ass'n*,
493 U.S. 411 (1990) ..................................................................................... 9

*FTC v. Whole Foods Mkt., Inc.*,
548 F.3d 1028 (D.C. Cir. 2008)................................................................ 11–12

*Giboney v. Empire Storage & Ice Co.*,
336 U.S. 490 (1949) ..................................................................................... 9

*Gordon v. Holder*,
721 F.3d 638 (D.C. Cir. 2013)..................................................................... 27

*Grosjean v. Am. Press Co.*,
297 U.S. 233 (1936) ................................................................................... 17

*Hartman v. Moore*,
547 U.S. 250 (2006) ................................................................................... 24

*Heckler v. Chaney*,
470 U.S. 821 (1985) ................................................................................... 21

*Hubbard v. U.S. Env't Prot. Agency*,
809 F.2d 1 (D.C. Cir. 1986)........................................................................ 23

*Lamont v. Postmaster General*,
381 U.S. 301 (1965) ................................................................................... 15

*League of United Latin Am. Citizens v. Executive Office of President*,
808 F. Supp. 3d 29 (D.D.C. 2025)............................................................... 21

*League of Women Voters v. Newby*,
838 F.3d 1 (D.C. Cir. 2016)........................................................................ 26

*Mahmoud v. Taylor*,
606 U.S. 522 (2025) ................................................................................... 12

*Marbury v. Madison*,
5 U.S. 137 (1803) ....................................................................................... 23

*Martin v. Wilks*,
490 U.S. 755 (1989) .... 22

*Mata v. Lynch*,
576 U.S. 143 (2015) .... 18

*McConnell v. FEC*,
540 U.S. 93 (2003) .... 15

*Media Matters for Am. v. Bailey*,
2024 WL 3924573 (D.D.C. Aug. 23, 2024) .... 11

*Media Matters for Am. v. FTC*,
2025 WL 2988966 (D.C. Cir. Oct. 23, 2025) .... 19

*Media Matters for Am. v. FTC*,
2026 WL 1354245 (D.C. Cir. May 4, 2026) .... 3

*Media Matters for Am. v. FTC*,
805 F. Supp. 3d 105 (D.D.C. 2025) .... 3, 6, 11, 21

*Media Matters for Am. v. Paxton*,
138 F.4th 563 (D.C. Cir. 2025) .... 6, 11, 19, 24–25, 27

*Media Matters for Am. v. Paxton*,
732 F. Supp. 3d 1 (D.D.C. 2024) .... 6

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) .... 1, 3

*NAACP v. Alabama*,
357 U.S. 449 (1958) .... 6

*Nat'l Soc'y of Pro. Engineers v. United States*,
435 U.S. 679 (1978) .... 9

*National Treasury Employees Union v. United States,*
927 F.2d 1253 (D.C. Cir. 1991) .... 12

*NRA v. Vullo*,
602 U.S. 175 (2024) .... 1–2, 6, 9, 14, 19, 24–25

*Nuclear Regul. Comm'n v. Texas*,
605 U.S. 665 (2025) .......... 21

*Padula v. Webster*,
822 F.2d 97 (D.C. Cir. 1987) .......... 21

*Playboy Ent. Grp., Inc. v. United States*,
30 F. Supp. 2d 702 (D. Del. 1998) .......... 17

*Schachar v. Am. Acad. of Ophthalmology, Inc.*,
870 F.2d 397 (7th Cir. 1989) .......... 8–9

*Taylor v. Sturgell*,
553 U.S. 880 (2008) .......... 22

*Telecomm. Research and Action Center v. FCC*,
750 F.2d 70 (D.C. Cir. 1984) .......... 20

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994) .......... 20

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
582 U.S. 449 (2017) .......... 25

*Trudeau v. FTC*,
456 F.3d 178 (D.C. Cir. 2006) .......... 18–19

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
425 U.S. 748 (1976) .......... 15

*Vogel v. City of Cincinnati*,
959 F.2d 594 (6th Cir. 1992) .......... 22–23

*Webster v. Doe*,
486 U.S. 592 (1988) .......... 20

*WWHT, Inc. v. FCC*,
656 F.2d 807 (D.C. Cir. 1981) .......... 21

*X Corp. v. World Fed'n of Advertisers*,
826 F. Supp. 3d 772 (N.D. Tex. 2026) .......... 9

*Ziglar v. Abbasi*,
582 U.S. 120 (2017) ........................................................................................ 24

**Statutes**

15 U.S.C. § 45(c) ........................................................................................ 19–20

28 U.S.C. § 1331 ........................................................................................ 18, 21

**Other Authorities**

Andrew Ferguson on X,
https://x.com/AFergusonFTC/status/1866641731892154546 .............................. 4

Chico Marx (as Chicolini),
*Duck Soup* (Paramount Pictures 1933)................................................................. 4

Clay Calvert,
*First Amendment Problems with Using Antitrust Law Against Social Media Platforms' Content Decisions*, AEI REPORT (Oct. 15, 2025) ............. 2, 4, 8

Concurring Statement of Commissioner Andrew Ferguson,
*FTC v. 1661, Inc.* (Dec. 2, 2024)........................................................................ 4

Daniel J. Gilman & Ben Sperry,
*Content Moderation and Antitrust Part IV - Is There an Empty Set at the Intersection of Antitrust and Content Moderation?*, CONCURRENCES ISSUES (Nov. 3, 2025).......................................................................... 3, 8–10

Interim Staff Report,
*GARM's Harm: How the World's Biggest Brands Seek to Control Online Speech*, H. Jud. Comm. (July 10, 2024)................................................................ 8

Jon Brodkin,
*Ad Industry Initiative Abruptly Shuts Down After Lawsuit Filed by Elon Musk's X*, ARS TECHNICA (Aug. 8, 2024) ............................................................ 8

Lawrence J. Spiwak,
*When Antitrust and the First Amendment Collide*, YALE J. ON REG. (Feb. 26, 2025)........................................................................................ 8–9

Mike Masnick,
*Oh, Look, the MAGA FTC Built the Censorship Industrial Complex It Was Screaming About*, TECHDIRT (Apr. 16, 2026) ........ 5, 8–9

*Small Business: Instruments and Casualties of the Censorship-Industrial Complex*, H. Comm. on Small Business (2024) ........ 7

Tr. of Oral Arg.,
*Media Matters for Am. v. FTC* (No. 25-5302) ........ 26

## GLOSSARY OF ABBREVIATIONS

Pursuant to D.C. Circuit Rule 28(a)(3), the following abbreviations are used in this Brief:

| | |
|---|---|
| **FTC** | Federal Trade Commission |
| **CIC** | Censorship-Industrial Complex |
| **CID** | Civil Investigative Demand |
| **GARM** | Global Alliance for Responsible Media |

## INTRODUCTION

This case is about the misuse of regulatory power to achieve an unconstitutional objective. The issue is straightforward: Damage to NewsGuard caused by the FTC's campaign of regulatory abuse is textbook irreparable harm in a motion for preliminary relief. Yet the FTC applies the wrong standard, then tries to argue the merits on this preliminary injunction appeal. In doing so, it fails to grasp what rules apply when federal regulators misuse their authority to try "to 'un-bias' what [they] think[] [is] biased." *Moody v. NetChoice, LLC*, 603 U.S. 707, 719 (2024). The FTC's opposition ignores this context and provides no support for the decision below.

## ARGUMENT

### I. The FTC Cannot Defend This Case as a Standard Antitrust Investigation and Enforcement Action.

Chairman Ferguson has been quite candid that his goal is to smash what he called the "censorship industrial complex," by which he means criticism of conservative news outlets. App.193, 195, 201. He has avowedly pursued NewsGuard for what he believes is a biased evaluation of the news, but that is an unconstitutional purpose. Government actors cannot "wield … power" to "threaten enforcement actions against … regulated entities"—either directly or through intermediaries—"to punish or suppress" protected speech. *NRA v. Vullo*, 602 U.S. 175, 187 (2024). The FTC's attempt to dress up its actions in antitrust garb cannot obscure this illicit

purpose. *See id.* at 195 (refusing to credit regulator's claim of "pursuing conceded violations of the law" as an alternative explanation for her censorial actions). Here, Chairman Ferguson and the FTC merely employed antitrust *tools* to achieve political *objectives*.

### A. Chairman Ferguson Made Clear the FTC's Actions Focused on the Content of NewsGuard's Ratings.

From the beginning, Chairman Ferguson proclaimed his purpose to regulate the marketplace of ideas, not the economic marketplace. He campaigned for appointment pledging to oppose the "agenda of the radical left" and to fight "Big Tech Censorship," App.215, and the President announced Ferguson's appointment echoing this record.[1] Chairman Ferguson had emphasized the need to combat "purely private censorship," explaining that "progressives, Silicon Valley, [and] everyone who is fighting 'disinformation,' [are] not just going to give up because of the election," and that "it's really important that the FTC take investigative steps in the new administration under President Trump." App.122.

Implementing this mandate, the FTC sought public comment regarding "technology platform censorship." App.221. Expert observers described this

[1] *See* Clay Calvert, *First Amendment Problems with Using Antitrust Law Against Social Media Platforms' Content Decisions*, AEI REPORT, at 3 (Oct. 15, 2025), https://www.aei.org/research-products/report/first-amendment-problems-with-using-antitrust-law-against-social-media-platforms-content-decisions/.

content-based focus and Chairman Ferguson's statements regarding censorship as "ominous," inconsistent with "the FTC's long lauded history as a research-based enforcement agency," and suggestive of "prejudgment."[2] A series of intrusive CIDs followed, issued to companies alleged to be part of the so-called "censorship industrial complex." *See* Opening Br.14-20 ("Br."). Reviewing courts found Chairman Ferguson's public pronouncements supported the preliminary conclusion the investigations were retaliatory. *E.g.*, *Media Matters for Am. v. FTC*, 805 F. Supp. 3d 105, 111–12 (D.D.C. 2025) (granting preliminary injunction), *appeal dismissed*, 2026 WL 1354245 (D.C. Cir. May 4, 2026).

The FTC's claim that the "breadth of the investigation … refut[es] NewsGuard's theory that it was singled out," FTC Br.47 ("Opp."), ignores that both propositions can be true: The FTC was broadly motivated by the unconstitutional purpose to "'un-bias' what it thinks [is] biased," *Moody*, 603 U.S. at 719, *and* it specifically targeted NewsGuard with burdens and restrictions because of its speech.

Chairman Ferguson's focus on NewsGuard was evident from the beginning and has continued throughout his tenure. During his campaign for the chairmanship, he wrote a concurrence approving a settlement in which he called for investigating

---

[2] *See* Daniel J. Gilman & Ben Sperry, *Content Moderation and Antitrust Part IV - Is There an Empty Set at the Intersection of Antitrust and Content Moderation?*, CONCURRENCES ISSUES, at 41 (Nov. 3, 2025), https://laweconcenter.org/resources/is-there-an-empty-set-at-the-intersection-of-antitrust-and-content-moderation/.

NewsGuard because it "seems to give a free pass to … major left-leaning outlets." App.210-13 (Concurring Statement of Commissioner Andrew Ferguson, *FTC v. 1661, Inc.* (Dec. 2, 2024)). This statement was notable not only because the gratuitous reference to NewsGuard was unrelated to the decision at hand—regulation of a website's marketing practices involving sneakers, apparel, and accessories—but also because it issued within days of his "leaked" memo campaigning for the chairmanship, *see* App.215, and other public advocacy of FTC actions against "purely private censorship," *see* App.196-203. Eight days after his statement in *1661, Inc*. and in response to his appointment, Ferguson announced that "at the FTC, we will end Big Tech's vendetta against competition and free speech."[3]

The FTC disputes none of this and claims NewsGuard has mischaracterized the record to "manufacture evidence of retaliation." Opp.2-3, 12, 19, 50-53. The government's main defense appears to be: "Who are you going to believe, me or Chairman Ferguson's own words?" *Compare* Chico Marx (as Chicolini), *Duck Soup* (Paramount Pictures 1933) ("Who you gonna believe, me or your own eyes?").

It takes particular umbrage at NewsGuard's citation of Ferguson's April 2025 interview where he explained the leverage government actors can bring to bear through investigations. Br.14; Opp.50-51. The FTC claims Chairman Ferguson

[3] *See* Calvert, *supra*, at 4 (quoting Andrew Ferguson on X, https://x.com/AFergusonFTC/status/1866641731892154546).

"categorically *rejected* such coercive tactics," Opp.51, but *that* is not what Ferguson said. He described what he viewed as the reality of government regulators' powers: "We have a tremendous array of investigative tools. Those tools are expensive when applied to you even if we don't win at the end of the day, so knuckle under." App.230. And he described it as "naïve" to fail to appreciate the government's powers. *Id.*

The FTC also ignores that Chairman Ferguson detailed the very course the agency followed here. Ferguson's explanation of FTC tactics (formal and informal) turned out to be the playbook for the CID to NewsGuard and the blacklist provision of the Omnicom Consent Order. The fact that Ferguson may have objected when previous administrations used such ploys is no defense when he (ironically or hypocritically) misuses the same regulatory tools. *See* Mike Masnick, *Oh, Look, the MAGA FTC Built the Censorship Industrial Complex It Was Screaming About*, TECHDIRT (Apr. 16, 2026), https://www.techdirt.com/2026/04/16/oh-look-the-maga-ftc-built-the-censorship-industrial-complex-it-was-screaming-about/. However much the government might want to distance itself from Ferguson's statements now, the abusive roadmap he described is the path the FTC pursued.

### B. The FTC's Claim That It Was Pursuing Legitimate Regulatory Objectives Rings Hollow.

The FTC describes Ferguson's focus on "Big Tech Censorship" and NewsGuard as "run-of-the-mill statement[s] regarding enforcement priorities," Opp.50, but as courts have found, they must be viewed in context of the FTC's

actions. *First Choice Women's Res. Ctrs., Inc. v. Davenport*, 146 S. Ct. 1114, 1125 (2026) (noting Attorney General's public statements calling pro-life groups "extremists" and suggesting "charges" might lie before issuing abusive subpoenas); *Media Matters for Am. v. Paxton*, 732 F. Supp. 3d 1, 28 (D.D.C. 2024) ("Defendant's description of [plaintiff] as a 'radical anti-free speech' and 'radical left-wing organization' … is evidence of retaliatory intent."), *aff'd*, 138 F.4th 563, 579 (D.C. Cir. 2025). *See Media Matters for Am. v. FTC*, 805 F. Supp. 3d at 111–12, 134–35 ("Chairman Ferguson and his colleagues have made comments characterizing [the plaintiff] and this investigative push 'in ideological terms.'").

Ferguson's attempt to frame these efforts in the language of "collusion" is no response. The claim he is "merely carrying out [his] regulatory responsibilities" cannot forestall First Amendment scrutiny. *Vullo*, 602 U.S. at 194, 196. *See NAACP v. Alabama*, 357 U.S. 449, 452–53, 464 (1958) (rejecting claim that state was merely enforcing Alabama foreign corporation registration law when it intrusively investigated an organization that had, among other things, "supported a Negro boycott of the bus lines in Montgomery").

The FTC's references to two interim congressional staff reports do not support its claims that the agency had "legitimate, nonretaliatory reasons" for its actions targeting NewsGuard. *See* Opp.9, 22, 25, 46, 51, 53. Contrary to its characterization of a 2024 Interim Staff Report of the House Committee on Small Business, that

committee focused on *government* efforts to police "misinformation" and did not address possible antitrust implications.[4] The report only suggested NewsGuard should not receive federal funds (based on an earlier, expired developmental grant), because "the government should not be using its position of power to influence the moderation of lawful speech." *House Small Business Report* at 11, 44. And it concluded "[i]t is NewsGuard's prerogative and right to assess media as it sees fit and to act upon those assessments in the marketplace, as it is for all non-government actors. The Constitution guarantees that the government shall not interfere with the freedom of the press." *Id.* at 44.[5]

Similarly, NewsGuard was mentioned tangentially in a House Judiciary Committee Interim Staff Report that asserted the Global Alliance for Responsible Media ("GARM") "recommends that its members work with organizations such as

[4] *See Small Business: Instruments and Casualties of the Censorship-Industrial Complex*, H. Comm. on Small Business (2024), https://smallbusiness.house.gov/uploadedfiles/house_committee_on_small_business_-_cic_report_september_2024.pdf, at 5, 9 ("*House Small Business Report*") (coining the term "Censorship-Industrial Complex" (CIC) and observing "[t]he Federal government is a primary component of the CIC, and it is this nexus which concerns the Committee.").

[5] Although the Report took issue with some NewsGuard ratings, it credited NewsGuard for "publish[ing] its assessments, offering transparency into its work." *Id.* at 42. The report asserted that any news rating system necessarily would be subjective, *id.* at 48, but it did not "comb through all of NewsGuard's ratings for inconsistencies in its work." *Id.* at 44.

GDI and NewsGuard."[6] The FTC relies heavily on this report despite the fact that NewsGuard never had any relationship with GARM, and notwithstanding expert analyses that such market behavior among advertisers to protect brand safety "is not anticompetitive conduct, but the very definition of freedom of expression."[7]

The FTC's "collusion" claim is "like saying five banks are running an illegal conspiracy because they all use FICO scores and independently decided not to lend to borrowers with scores below 600." *Masnick*, *supra*. Such market activity does not raise antitrust issues.[8] It came as no surprise, then, that the X Corp. suit that ended

---

[6] Interim Staff Report, *GARM's Harm: How the World's Biggest Brands Seek to Control Online Speech*, H. Jud. Comm. (July 10, 2024), http://tinyurl.com/2v7ej2wj ("*House Judiciary Report*") at 26. That report focused on an advertising industry initiative that was terminated in 2024 after being sued by X Corp. *See* Jon Brodkin, *Ad Industry Initiative Abruptly Shuts Down After Lawsuit Filed by Elon Musk's X*, ARS TECHNICA (Aug. 8, 2024), https://arstechnica.com/tech-policy/2024/08/ad-industry-initiative-abruptly-shuts-down-after-lawsuit-filed-by-elon-musks-x/.

[7] Lawrence J. Spiwak, *When Antitrust and the First Amendment Collide*, YALE J. ON REG. (Feb. 26, 2025), https://www.yalejreg.com/nc/when-antitrust-and-the-first-amendment-collide-by-lawrence-j-spiwak/. *See also* Gilman & Sperry, *supra* at 46 ("preserving brand equity … is analytically distinct from a concerted effort to manipulate market conditions in ways traditionally scrutinized under antitrust doctrines"); Calvert, *supra*, at 5 (describing FTC's collusion theory as a "misapplication of antitrust laws").

[8] *See*, *e.g.*, *FTC v. Qualcomm Inc.*, 969 F.3d 974, 993 (9th Cir. 2020) ("the Sherman Act 'does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal'") (citation omitted); *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 501 (1988) (private standard-setting "can have significant procompetitive effects"); *Schachar v. Am. Acad. of*

the GARM initiative was dismissed as a "faux antitrust lawsuit[]" because it did not allege anticompetitive conduct or antitrust injury for advertisers "to pursue their own collective interests as to where they place their advertisements." *X Corp. v. World Fed'n of Advertisers*, 826 F. Supp. 3d 772, 809–11 (N.D. Tex. 2026).[9]

**C. The FTC's Targeting of NewsGuard Undermines Its Claim of Addressing Legitimate Antitrust Concerns.**

Even if the FTC were pursuing legitimate antitrust law objectives, that does not forestall First Amendment scrutiny where the agency's remedial actions target speech. *Vullo*, 602 U.S. at 196. And here, "[t]he real tell … is the remedy." *See* Masnick, *supra*. Chairman Ferguson "is claiming to restore the marketplace of ideas by directly removing a participant from it." *Id.*

**1. Omnicom Consent Order**

The Omnicom-IPG merger combined the two largest advertising holding companies. One would expect antitrust review would examine potential adverse

---

*Ophthalmology, Inc.*, 870 F.2d 397, 400 (7th Cir. 1989) ("Animosity, even if rephrased as 'anticompetitive intent', is not illegal without anticompetitive effects.").

[9] Cases the FTC cites saying the government may "incidentally" restrict speech to remedy economic boycotts or price fixing do not apply. Opp.34-35, 37 n.9. This case does not involve any refusal to deal for the "purpose and effect of raising prices," *FTC v. Super. Ct. Trial Lawyers Ass'n*, 493 U.S. 411, 419 (1990), a prohibition on competitive bidding, *Nat'l Soc'y of Pro. Engineers v. United States*, 435 U.S. 679, 681 (1978), or picketing to restrain trade, *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 491–92 (1949), and the FTC's restrictions on speech are direct, not incidental. *See* Gilman & Sperry, *supra* at 45-46; Spiwak, *supra*.

market effects, such as reduced competition, higher advertising prices, or other economic impacts. But instead, "the focus of the [Omnicom] order as a whole is clearly on the issue of content, not the normal concerns of collusion to fix prices, reduce output, or allocate markets."[10] And the Order as initially proposed was modified at the urging of a disgruntled news outlet that was upset over its rating specifically to prevent the merged entity from engaging NewsGuard. Br.20-24. The addition of a condition prohibiting Omnicom from entering any agreement with a news rating service based on "adherence to journalistic standards or ethics," App.308-09, had nothing to do with antitrust concerns and everything to do with Chairman Ferguson's preoccupation with NewsGuard.

### 2. Overbroad and Abusive CID

The overbreadth of the CID and the FTC's stated objectives targeting NewsGuard also illustrate the unconstitutional purpose. Br.18-20, 46-49. As the Supreme Court recently noted, it has confronted abusive investigations since the 1950s, observing, "[o]ver and again, we have held those demands burden the exercise of First Amendment rights." *First Choice Women's Res. Ctrs.*, 146 S. Ct. at

[10] Gilman & Sperry, *supra*, at 48. The Omnicom complaint "did not allege a history of price fixing or market allocation agreements among the parties to the transaction; it did not allege that the merger was likely to lead to price fixing involving the merged entity and others in the market; and it did not allege (or explain how) the merger was likely to lead to increased prices or reduced output in the relevant market." *Id.* at 47.

1131. Every court where regulators launched dragnet investigations into the so-called "censorship industrial complex" has reached the same conclusion. *See Paxton*, 138 F.4th at 579; *Media Matters for Am. v. Bailey*, 2024 WL 3924573, at *18 (D.D.C. Aug. 23, 2024); *Media Matters for Am. v. FTC*, 805 F. Supp. 3d at 129–31.

The FTC's main defense is to assert the withdrawal of the CID moots the case with respect to the investigation. Opp.4, 14, 17-19, 21-24, 28, 30, 40. However, as discussed *infra*, Section III.B, that is not the law. But whatever the impact of its withdrawal, the FTC cannot pretend that the broad and abusive CID of NewsGuard was a run-of-the-mill investigation and not retaliatory. *See Paxton*, 138 F.4th at 584; *Media Matters for Am. v. FTC*, 805 F. Supp. 3d at 129–31. That persistent fact colors all the FTC's actions.

## II. The FTC's Actions Targeting NewsGuard Inflicted Ongoing Irreparable Injury.

### A. The FTC's Direct Infringement of First Amendment Rights Is Irreparable Harm.

The district court denied NewsGuard's requested preliminary injunction based on its view that NewsGuard failed to "demonstrate imminent, irreparable harm." App.730. That is the sole issue before this Court on appeal.[11] The district court

[11] The district court did not question NewsGuard's showings on other preliminary injunction factors. *See* Br.29-30. The FTC acknowledges this, and that this Court has held the "proper course of action" in a circumstance such as this is (upon reversal) to remand for findings and conclusions on the remaining factors. *See* Opp.39 (quoting *FTC v. Whole Foods Mkt., Inc.*, 548 F.3d 1028, 1041 (D.C. Cir.

misunderstood and misapplied the irreparable harm standard, *see* Br.34-45, and the FTC now compounds that error. The FTC maintains it is not direct harm for the government to cut off much of NewsGuard's audience for its reporting and other journalism. That ignores ample authority that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 299, 300–02 (D.C. Cir. 2006) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)); *accord Mahmoud v. Taylor*, 606 U.S. 522, 569 (2025).

As explained, the irreparable harm showing needed for preliminary injunctive relief is clear from two of this Court's precedents: *National Treasury Employees Union v. United States* (*NTEU*), 927 F.2d 1253 (D.C. Cir. 1991), and *Chaplaincy of Full Gospel Churches*, 454 F.3d 290. *See* Br.34-38. A preliminary injunction is appropriate where the party seeking relief can "demonstrate that First Amendment interests are either threatened or in fact being impaired at the time relief is sought." *NTEU*, 927 F.2d at 1254–55 (citation and brackets omitted).

---

2008)). But the government argues in the next breath that because NewsGuard has not briefed the other preliminary injunction factors in this appeal—*i.e.*, the ones not at issue now—it has "forfeited the argument that a preliminary injunction is warranted." Opp.39. This argument is absurd, and the government offers no authority for it.

When a plaintiff "alleges injury from a rule or regulation that directly limits speech, the irreparable nature of the harm may be presumed." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 301 (quoting *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 349–50 (2d Cir. 2003)). In its opposition, the FTC agrees this standard applies,[12] but misstates the record by contending (repeatedly) that NewsGuard suffered no direct harm from the Omnicom Consent Order because it "does not prevent NewsGuard from speaking." Opp.17; *see also id.* at 2, 14, 35, 37-38.

But the Omnicom Order eliminates a major portion of NewsGuard's prospective audience for its journalism. It prevents the world's largest advertising holding company and its agencies from using third-party services that evaluate "viewpoints as to the veracity of news reporting" and "adherence to journalistic standards or ethics"—language which, not coincidentally, precisely describes NewsGuard's News Reliability Ratings. *See* App.308-310; App.6-10. This is a direct restriction on NewsGuard's speech—which existed at the time of the preliminary injunction motion and continues today—for which irreparable harm is presumed. *Chaplaincy of Full Gospel Churches*, 454 F.3d at 301.[13]

---

[12] *See* Opp.31 ("Courts appropriately absolve litigants from the requirement of demonstrating irreparable harm only where the chilling effect on speech is apparent from the direct nature of the restriction").

[13] The severity of the FTC's infringement of speech rights has expanded with entry of the Dentsu Consent Orders, *see* Br.24-26, and a further stipulated consent order with Havas Media Group, the last of the "Big Six" worldwide ad agency

The FTC says the Order burdens NewsGuard's speech only "indirectly" because it formally regulates Omnicom. Opp.32-35. But the order is "indirect" only in the sense that the FTC imposed the restriction through an intermediary rather than directly on NewsGuard. That is the quintessential *modus operandi* of unconstitutional jawboning, as the Supreme Court held in *Vullo*—"a government official cannot do indirectly what she is barred from doing directly," *i.e.*, getting "a private party to punish or suppress disfavored speech on her behalf." *Vullo*, 602 U.S. at 190. *See infra*, Section III.A.2; *see also Backpage.com, LLC v. Dart*, 807 F.3d 229, 238 (7th Cir. 2015) (reversing denial of preliminary injunction where sheriff pressured credit card companies to end their use on the Backpage website, concluding such a "campaign of suffocation would be bound to cause irreparable injury").

Restricting to whom a party can speak is no less infringing of First Amendment rights than limiting what the party can say. The Supreme Court has long recognized that "[l]aws enacted to control or suppress speech may operate at different points in the speech process." *Citizens United v. FEC*, 558 U.S. 310, 336 (2010). As Justice Scalia cautioned, "[c]ontrol any cog in the machine, and you can halt the whole apparatus. License printers, and it matters little whether authors are

---

holding companies—now banning all of them from using input from NewsGuard. *See* Opp.13-14.

still free to write. Restrict the sale of books, and it matters little who prints them." *McConnell v. FEC*, 540 U.S. 93, 251 (2003) (Scalia, J., concurring in part and dissenting in part). The First Amendment's protections apply to *communications* and thus extend to speakers and their audiences alike. *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976); *see also Culver v. Sec. of the Air Force*, 559 F.2d 622, 641 n.21 (D.C. Cir. 1977) (Bazelon, J., dissenting) (a "vital facet of free speech is that of effective access to an audience").

The FTC insists NewsGuard remains "free" to send its ratings to Omnicom, Opp.35, but that is meaningless because Omnicom and its agencies are barred from using them, or NewsGuard's editorial judgments, to "determine or direct Advertisers' advertising placements." App.310. "The dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them." *Lamont v. Postmaster General*, 381 U.S. 301, 308 (1965) (Brennan, J., concurring). The FTC's position boils down to saying: "We're not infringing speech rights—you're free to say whatever you want to an empty hall."

**B. The Record Shows Irreparable Harm.**

This Court has emphasized that the key inquiry in assessing a preliminary injunction is whether "First Amendment interests were either threatened or in fact being impaired at the time" a party sought preliminary injunctive relief. *Chaplaincy of Full Gospel Churches*, 454 F.3d at 302 (quoting *Elrod*, 427 U.S. at 373). And

where, as here, a party shows direct, ongoing harm to First Amendment rights, it need not separately allege chill. *Id.* at 301; *see generally* Br.38-40. In any event, the record before the district court was clear that NewsGuard's First Amendment rights had been impaired and would continue to be absent an injunction.

The Omnicom Consent Order substantially limited NewsGuard's opportunities to provide services and communicate with subscribers. A longstanding client pulled out of dealings with NewsGuard after announcement of the Omnicom Consent Order. App.131 ¶ 66. Interpublic Group (IPG), the ad agency conglomerate acquired by Omnicom, did not renew its contract with NewsGuard that it had held for five years before. *Id.* ¶ 67; *see also* Br.28. A major digital advertising platform cancelled its contract out of concerns that working with NewsGuard would be viewed unfavorably by the FTC. *See* Br.28.

The FTC disregards the evidence, saying NewsGuard's actual loss of clients for its news ratings and opinion services is "wholly speculative" and a "mere monetary injury." *See* Opp.25-27. On the first point—given the FTC's and Chairman Ferguson's aim was to throttle NewsGuard, in part by intimidating its subscribers—it is no surprise they would use guarded language when discontinuing services. *See Dart*, 807 F.3d at 233 ("But what would one expect an executive of Visa to say? 'I am afraid of the guy?'").

On the latter point, the FTC overlooks that imposing financial costs and losses on a publisher is not a mere "pocketbook injury," it is a First Amendment harm that diminishes NewsGuard's opportunity to convey, and its subscribers' opportunities to receive, protected speech. *See Playboy Ent. Grp., Inc. v. United States*, 30 F. Supp. 2d 702, 717–18 (D. Del. 1998), *aff'd*, 529 U.S. 803 (2000); *Grosjean v. Am. Press Co.*, 297 U.S. 233, 250 (1936) (holding state tax on select newspapers unconstitutional as "a deliberate and calculated device … to limit the circulation of information").

The FTC otherwise contends NewsGuard conceded it had not suffered irreparable harm based on one comment of counsel in the preliminary injunction argument acknowledging that NewsGuard's complaint did not specifically allege chilling effects. *See* Opp.1, 16, 28. The FTC's argument is selective parsing at best, because NewsGuard's counsel explained elsewhere in the argument that NewsGuard *had* been chilled by the FTC's retaliatory actions. *See* App.494-97 (NewsGuard pulled back from publishing analyses of advertising reliability and brand safety and from referring to "misinformation," which had become a trigger for FTC scrutiny). The FTC has no answer on this score.[14]

[14] The FTC also falsely claims NewsGuard delayed seeking relief. Opp.28-29. The FTC relies on *Benisek v. Lamone*, in which plaintiffs "did not move for a preliminary injunction … until six years" after the challenged congressional map was adopted and "over three years after the plaintiffs' first complaint was filed." 585 U.S. 155, 159 (2018). By contrast, NewsGuard moved for a preliminary injunction

The record shows the FTC's actions—both the year-long pursuit of the CID and the Omnicom Consent Order—*had impaired* First Amendment interests and presented a patent threat of continuing to do so if not enjoined.

## III. The FTC's Jurisdictional Arguments Do Not Bar NewsGuard's First Amendment Claims.

The FTC seeks to avoid review of the sole issue decided below by asserting meritless jurisdictional challenges.

### A. The District Court Had Jurisdiction Over NewsGuard's Challenge.

Section 1331 confers jurisdiction over constitutional challenges to agency action. *Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006). Start with the text: District courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As Justice Gorsuch emphasized in *Axon Enterprise, Inc. v. FTC*, Section 1331's text "is as clear as statutes get": "Not *may* have jurisdiction, but *shall*. Not *some* civil actions arising under federal law, but *all*." 598 U.S. 175, 205 (2023) (Gorsuch, J., concurring). When a federal court has jurisdiction, it has a "virtually unflagging obligation" to exercise it. *Mata v. Lynch*, 576 U.S. 143, 150 (2015) (quoting *Colorado River Water*

---

within days of filing its Complaint. And NewsGuard filed suit less than three weeks after its negotiations with the FTC over the CID ended, despite NewsGuard's good faith participation. *See* App.404-406. The FTC now seeks to penalize NewsGuard for engaging in negotiations, which were undertaken to avoid litigation.

*Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). And that includes First Amendment claims for retaliation, *Trudeau*, 456 F.3d at 190 & n.22 (collecting cases), jawboning, *see Vullo*, 602 U.S. at 190, 198, and challenges to abusive investigative demands. *See First Choice Women's Res. Ctrs.*, 146 S. Ct. at 1128–29; *Paxton*, 138 F.4th at 582–83; *Media Matters for Am. v. FTC*, 2025 WL 2988966, at *3–5 (D.C. Cir. Oct. 23, 2025) (per curiam).

#### 1. 15 U.S.C. § 45(c) does not foreclose NewsGuard's claims.

The FTC erroneously contends 15 U.S.C. § 45(c) required NewsGuard to challenge the Omnicom Consent Order in a court of appeals within sixty days. Opp.2, 41-42. The statutory text demonstrates why that is wrong. Section 45(c) authorizes judicial review for "[a]ny person, partnership, or corporation required by an order of the Commission to cease and desist." 15 U.S.C. § 45(c). As the FTC itself explains, that provision applies to "[t]he respondent named in the order." Opp.6-7. But NewsGuard is not a respondent named in the Consent Order. Accordingly, Section 45(c) affords NewsGuard no mechanism for judicial review.

Nor does Section 45(c) divest the district court of jurisdiction over NewsGuard's constitutional claims. A statutory review scheme does not displace jurisdiction unless Congress's intent to do so is "fairly discernible" and the claims are "of the type Congress intended to be reviewed within th[e] statutory structure." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010)

(quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994)). The FTC's own authority likewise explains that a special appellate review provision displaces district court jurisdiction over only the "class of claims covered by the statutory grant of review power." *Telecomm. Research and Action Center v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984). NewsGuard's claims plainly fall outside that class because, as the FTC itself insists, NewsGuard cannot invoke Section 45(c).

The FTC then argues that because Section 45(c) is unavailable to NewsGuard, the company is barred from obtaining judicial review altogether. Opp.42 ("NewsGuard cannot challenge the Omnicom order because it is not a party subject to that order"). That result would contravene the Supreme Court's instruction that "Congress rarely allows claims about agency action to escape effective judicial review," *Axon*, 598 U.S. at 186, particularly where constitutional claims are at stake. *See Thunder Basin*, 510 U.S. at 215 n.20; *see also Webster v. Doe*, 486 U.S. 592, 603 (1988) (noting the "'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim").

*Consumer Federation of America v. FTC*, 515 F.2d 367 (D.C. Cir. 1975), does not support that outcome. There, consumer organizations dissatisfied with the FTC's refusal to order corrective advertising sought review under the APA. *Id.* at 369. The court held only that petitioners were "not entitled to review *under the APA*." *Id.*

(emphasis added). NewsGuard, by contrast, does not invoke the APA. It invokes Section 1331 and seeks traditional equitable relief.

That distinction is dispositive. "[E]ven where agency action is 'committed to agency discretion by law,' review is still available to determine if the Constitution has been violated." *Padula v. Webster*, 822 F.2d 97, 101 (D.C. Cir. 1987); *see WWHT, Inc. v. FCC*, 656 F.2d 807, 815 n.15 (D.C. Cir. 1981) ("In no event would a finding of nonreviewability on the ground that an action is committed to agency discretion preclude judicial review when constitutional violations have been alleged").[15]

Accordingly, courts "routinely allow constitutional claims in equity to proceed where relief under the APA is foreclosed." *Media Matters v. FTC*, 805 F. Supp. 3d at 127; *see also League of United Latin Am. Citizens v. Executive Office of President*, 808 F. Supp. 3d 29, 69 (D.D.C. 2025) ("[C]ontrolling precedent affords broader latitude to a plaintiff seeking equitable relief from a *constitutional* violation, rather than a statutory one."); *Free Enter. Fund*, 561 U.S. at 491 n.2. At bottom, an

[15] The FTC's citation of *Balt. Gas & Elec. Co. v. FERC*, 252 F.3d 456, 457 (D.C. Cir. 2001), is no help. Opp.42-43. *Heckler v. Chaney*, 470 U.S. 821 (1985), on which *Baltimore Gas* chiefly relied, expressly noted "[n]o colorable claim [was] made … that the agency's refusal to institute proceedings violated any constitutional rights of respondents." *Chaney*, 470 U.S. at 838. Likewise, *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340 (1984), and *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665 (2025), did not involve constitutional claims.

agency's discretion to settle enforcement litigation does not include discretion to violate the Constitution.[16]

### 2. NewsGuard's nonparty status does not bar its constitutional challenge to the Omnicom Consent Order.

The FTC's position that NewsGuard's nonparty status itself bars a constitutional challenge ignores a foundational rule: "[A] litigant is not bound by a judgment to which she was not a party." *Taylor v. Sturgell*, 553 U.S. 880, 898 (2008). That rule reflects the "deep-rooted historic tradition that everyone should have his own day in court." *Martin v. Wilks*, 490 U.S. 755, 762 (1989) (citation and quotations marks omitted); *see also Frederick Cnty. Fruit Growers Ass'n, Inc. v. Martin*, 968 F.2d 1265, 1270 (D.C. Cir. 1992).

This Court has expressly declined to adopt a rule under which "consent decrees to which the government was a party would be immune from challenge regardless of their effect on individual rights." *Cleveland Cnty. Ass'n for Gov't by People v. Cleveland Cnty. Bd. of Comm'rs*, 142 F.3d 468, 474 (D.C. Cir. 1998) (per curiam). Sister circuits likewise recognize nonparties may challenge consent decrees that infringe their constitutional rights. *See Vogel v. City of Cincinnati*, 959 F.2d 594,

[16] The agency's exhaustion argument also fails. Opp.43. NewsGuard was not a party to an adversarial proceeding regarding the Consent Order that could warrant imposition of an issue-exhaustion requirement. *See Carr v. Saul*, 593 U.S. 83, 89 (2021).

599 (6th Cir. 1992) (nonparties may "challenge the constitutionality of the decree as it is applied to [them]").

### 3. NewsGuard asserts classic First Amendment claims for equitable relief.

The FTC next contends NewsGuard's constitutional claims rest on an "entirely unprecedented" and "wholly novel theory" of "retaliatory settlement of litigation." Opp.2, 44. The agency is wrong twice over.

First, NewsGuard seeks traditional injunctive relief. "[I]t is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution." *Bell v. Hood*, 327 U.S. 678, 684 (1946). "The ability to sue to enjoin unconstitutional actions by … federal officers … reflects a long history of judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). As this Court has put it, the "power to enjoin unconstitutional acts by the government … is inherent in the Constitution itself." *Hubbard v. U.S. Env't Prot. Agency*, 809 F.2d 1, 11 n.15 (D.C. Cir. 1986) (citing *Marbury v. Madison*, 5 U.S. 137 (1803)).[17]

[17] The FTC's reliance on *Alexander v. Sandoval*, 532 U.S. 275 (2001), is misplaced. Opp.44. *Sandoval* addressed whether Congress created an implied right of action under Title VI to enforce the statute's disparate impact regulations. *Sandoval*, 532 U.S. at 288–93. NewsGuard does not ask the Court to find an implied statutory claim; its claims arise under the Constitution.

Second, NewsGuard's substantive First Amendment claims are anything but "unprecedented." Two years ago, a unanimous Supreme Court reaffirmed that "a government official cannot do indirectly what she is barred from doing directly." *Vullo*, 602 U.S. at 190. *Vullo* did "not break new ground"; it reaffirmed *Bantam Books*' longstanding rule prohibiting government officials from stifling protected expression through private intermediaries, which in *Vullo* involved consent decrees with third parties. *Id.* at 197. The FTC may investigate antitrust violations and review mergers, but it may not wield those powers to suppress NewsGuard's protected expression. That is not a novel theory. It is black letter First Amendment law.

The FTC also argues NewsGuard lacks a cause of action to challenge the CID, relying on *Hartman v. Moore*, 547 U.S. 250 (2006), for the proposition that a retaliatory investigation claim is not cognizable. Opp.44 n.14. But *Hartman* involved a claim for damages. Its holding—that a plaintiff in a retaliatory prosecution action must plead and prove absence of probable cause—does not foreclose a litigant from seeking prospective injunctive relief. 547 U.S. at 252. Even where a damages action is unavailable, federal courts retain "traditional equitable powers" to enjoin unconstitutional conduct. *Ziglar v. Abbasi*, 582 U.S. 120, 133–34, 148 (2017). *Paxton* confirms such claims are cognizable: Where a litigant suffers harm as the "specific target[] of a retaliatory government investigation" and is "not challenging

a general government policy," that harm constitutes cognizable injury sufficient to support a claim. 138 F.4th at 582.

### B. Withdrawal of the CID Does Not Eliminate NewsGuard's Irreparable Injury.

The FTC is also wrong that withdrawal of the CID eliminates NewsGuard's irreparable injury. Opp.18. The voluntary cessation doctrine imposes a "heavy burden" to establish there is no reasonable expectation a defendant will resume the challenged conduct. *First Choice*, 146 S. Ct. at 1130 (quoting *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 457 n.1 (2017)); *see also Friends of the Earth, Inc. v. Laidlaw Env't Services (TOC), Inc.*, 528 U.S. 167, 190 (2000) (describing the burden as "formidable"). Courts apply that demanding standard because our "'Constitution deals with substance,' not strategies." *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Cummings v. Missouri*, 71 U.S. 277, 325 (1867)).

The FTC has not carried that burden. Viewed in the context of the FTC's retaliatory campaign, *see Vullo*, 602 U.S. at 191–93, the agency's bare assertion that it has "no intention of reissuing the CID or making similar demands" because the *Dentsu* settlements "resolved the issues related to NewsGuard that gave rise to the CID," Opp.23, does not establish that materially similar investigative demands will not recur.

The FTC retains broad, ongoing authority to monitor and enforce the Omnicom Consent Order, including continued access to Omnicom's records.

App.310-13. That enforcement authority provides an avenue for similarly intrusive investigative demands. More fundamentally, the CID was not an isolated event; it was one component of a broader retaliatory campaign. *See* Section I, *supra*. And the FTC withdrew it shortly after facing skeptical questioning during oral argument in *Media Matters*.[18] Against that backdrop, the FTC's assurances do not satisfy its "formidable" burden to show that materially similar investigative demands will not recur. *Friends of the Earth*, 528 U.S. at 190.

## IV. NewsGuard Is Entitled to a Preliminary Injunction.

This Court may reverse the decision below on the sole issue it decided, or it may go further and order the district court to order an injunction. Where the record is clear, this Court may "independently grant an injunction" without remanding to the district court. *League of Women Voters v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016); *see Dart*, 807 F.3d at 239. And contrary to the FTC's claims, NewsGuard has shown "likely success on the merits," "a balance of the equities in its favor," and "accord with the public interest." *Newby*, 838 F.3d at 6 (quotation omitted).

The FTC does not dispute that NewsGuard "engaged in conduct protected under the First Amendment." *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016); *see* Br.48. Nor does it dispute that Chairman Ferguson's campaign against NewsGuard

[18] *See, e.g.*, Tr. of Oral Arg. at 9:20–11:6; 25:8–26:6; 33:22–35:9; 79:10-14, *Media Matters for Am. v. FTC* (No. 25-5302).

and the FTC's actions implementing it would deter a person of ordinary firmness from speaking. *See* Br.48-49. Regardless of whether NewsGuard's claims are characterized as retaliation or coercion restricting speech, the controlling principle remains: Regulators cannot use their authority—either directly or through intermediaries—to censor speech.

"It is well settled that the balance of equities and public interest factors merge if the government is the opposing party." *Paxton*, 138 F.4th at 585. Both of these "factors [are] established when there is a likely First Amendment violation," *Centro Tepeyac v. Montgomery County*, 722 F.3d 184, 191 (4th Cir. 2013) (quotation omitted), because "enforcement of an unconstitutional law is always contrary to the public interest," *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013), and "no substantial harm to others can be said to inhere in" enjoining it, *Déjà vu of Nashville, Inc. v. Metro. Gov't of Nash. & Davidson Cnty.*, 274 F.3d 377, 400 (6th Cir. 2001).

**CONCLUSION**

The Court should reverse the lower court's decision and remand with instructions to grant NewsGuard's Motion for a Preliminary Injunction or grant one outright itself.

Dated: August 31, 2026

Respectfully Submitted,

/s/ Robert Corn-Revere
Robert Corn-Revere
(D.C. Bar No. 375415)
James C. Grant
(WA Bar No. 14358)
Samuel Rudovsky
(PA Bar No. 335724)
Not Admitted to the D.C. Bar. D.C. Practice limited to U.S. federal courts and related matters under D.C. Ct. App. R. 49(c)(3).
Heather Pincus
(NY Bar No. 6324255)
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, DC 20003
(215) 717-3473
bob.corn-revere@fire.org
jim.grant@fire.org
sam.rudovsky@fire.org
heather.pincus@fire.org

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,482 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: August 31, 2026

Respectfully Submitted,

/s/ Robert Corn-Revere

Robert Corn-Revere
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2026, the foregoing Reply Brief of Appellant was electronically filed with the Clerk of this Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

Dated: August 31, 2026

Respectfully Submitted,

/s/ Robert Corn-Revere
Robert Corn-Revere
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION

*Counsel for Plaintiff-Appellant*